Derry District Court
No. 2007-290

### THE STATE OF NEW HAMPSHIRE

v.

### ERNEST SOLOMON

Argued: February 21, 2008
Opinion Issued: March 20, 2008

48

*Kelly A. Ayotte*, attorney general (*Michael S. Lewis*, attorney, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Ernest Solomon, appeals the decision of the Derry District Court (*Stephen*, J.) to grant a mistrial over his objection after the original presiding justice (*Coughlin*, J.) became unavailable. We reverse.

The following facts are supported by the record. The defendant is charged with three misdemeanors. Trial was initially set for May 22, 2006, but was continued twice at the defendant's request. On August 14, 2006, Judge Coughlin began to hear evidence, but suspended trial during the cross-examination of the first witness, the alleged victim in the case, so that a lawyer could be appointed for the witness. Trial recommenced on October 23, 2006, but was again continued when the appointed lawyer for the victim requested time to obtain and review the transcript of her client's earlier testimony. The trial was scheduled to continue on January 22, 2007.

In the interim, Judge Coughlin, a member of the New Hampshire National Guard, volunteered for duty. Specifically, on December 12, 2006, Judge Coughlin volunteered "to be mobilized for service at Baghdad, Iraq or other such place plus any additional temporary duty locations as needed by the Army." In addition, Judge Coughlin specifically waived "any and all formal advanced notice to mobilization, such as the customary 30-day notification notice." As part of this waiver, Judge Coughlin stated, "Neither my employer, my family nor I will be adversely harmed by not having 30 days to prepare for this mobilization." Judge Coughlin was deployed to Iraq in January 2007.

Trial recommenced before Judge Stephen on January 22, 2007. At that time, the defendant moved to proceed *pro se*, and, upon being permitted to do so, moved to dismiss the case for lack of a speedy trial. When the court denied the motion, the defendant moved to have counsel reinstated and moved to continue. Both motions were granted.

Following this continuance, the defendant moved to dismiss, arguing that Judge Coughlin's absence after beginning to hear evidence violated his right to have his trial completed by a particular tribunal, that is, the same fact finder, under Part I, Article 16 of the New Hampshire Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution. The defendant further argued that, because Judge Coughlin volunteered to go to Iraq, his current unavailability did not create a manifest necessity for a mistrial.

On February 13, 2007, Judge Stephen conducted a hearing on the defendant's motion during which he heard argument from both the defendant and the prosecution, and explored several alternatives to a mistrial. After it was decided none of these options was viable, Judge Stephen declared a mistrial, finding "there is manifest necessity for a mistrial under the circumstances herein or the ends of public justice would be defeated.'" Judge Stephen further concluded that the fact Judge Coughlin volunteered for duty was not critical to the mistrial analysis, noting,

> The fact remains that Judge Coughlin was "called to duty". It was clearly up to the military to decide whether to deploy Judge Coughlin to Iraq regardless of whether he volunteered or not. Considering that the military has made that decision to deploy Judge Coughlin and now that the military has indicated he is not available in any manner, a mistrial is appropriate considering that defense counsel has rejected all other available alternative options.

The defendant now appeals this decision, arguing that retrial before a different fact finder would violate his rights under both the New Hampshire and Federal Constitutions' Double Jeopardy Clauses. The defendant submits that the circumstances of this case, in particular, Judge Coughlin's voluntary departure, do not constitute manifest necessity permitting mistrial over his objection because his trial was terminated by the "unilateral and voluntary decision of a trial participant," rather than some unforeseen or unavoidable circumstance.

The State acknowledges that jeopardy attached in this case when Judge Coughlin began to hear evidence. *See State v. Courtemarche*, 142 N.H. 772, 773-74 (1998). The State argues that retrial is not barred, however, because the military made the ultimate decision to deploy Judge Coughlin to Iraq, thus giving rise to a manifest necessity for the mistrial declaration. We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231-32 (1983), and cite federal opinions for guidance only, *id.* at 233.

■■ "It is *fundamental* that under the double jeopardy clauses of the New Hampshire and United States Constitutions the defendant has a valued right to have his trial completed by a particular tribunal." *State v. Pugliese*, 120 N.H. 728, 729-30 (1980) (quotations omitted; emphasis added). The right to a particular tribunal is an accused's right to complete a trial with a chosen jury, once sworn, or a particular judge, once evidence has commenced. *See Crist v. Bretz*, 437 U.S. 28, 35-36 (1978) (describing right to a particular tribunal as the need to protect interest of the accused in retaining a chosen jury); *Courtemarche*, 142 N.H. at 773-74 (jeopardy attaches in bench trial when judge begins to hear evidence).

> Such a right exists because the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*State v. Bertrand*, 133 N.H. 843, 853 (1991) (quotations omitted). "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's actions." *United States v. Jorn*, 400 U.S. 470, 483 (1971). Thus, "a trial court may declare a mistrial over the defendant's objections, without jeopardizing retrial, only if there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *State v. Paquin*, 140 N.H. 525, 528 (1995) (quotations omitted). This power should be exercised "only with the

greatest caution, under urgent circumstances, and for very plain and obvious causes." *State v. Gould*, 144 N.H. 415, 416-17 (1999) (quotation omitted).

██ Manifest necessity is a variable standard which cannot be applied mechanically. *Id.* at 417. However, if the trial court unsustainably exercised its discretion in concluding that manifest necessity required a mistrial, then the Double Jeopardy Clause will bar retrial. *See Paquin*, 140 N.H. at 528; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "[A] mistrial is of such gravity and implicates such a fundamental constitutional right that we will defer to a trial court's finding of manifest necessity only where the record affirmatively supports it." *Gould*, 144 N.H. at 418. It is the State's burden to demonstrate that the mistrial was justified by manifest necessity. *Id.* at 416. The State has failed to meet its burden here.

The record is clear that Judge Coughlin initially volunteered to go to Iraq on this occasion, independent of any military directive. Judge Coughlin also waived any notification period to which he was entitled. These actions alone, however, are not determinative on the question of manifest necessity arising from his subsequent unavailability. Indeed, we note that it is not, as the defendant suggests, the voluntary nature of Judge Coughlin's actions that defeats manifest necessity here. Rather, it is the totality of the circumstances surrounding his departure that requires this conclusion. More specifically, the State has failed to demonstrate that any consideration was given to the possible effect upon the defendant's constitutional rights or that any measures were taken to ensure those rights were protected.

██ Although the exact date may have been unknown, Judge Coughlin's departure was clearly anticipated when he volunteered for duty, yet the State has failed to show either that any reasonable preventative measures were taken to protect the defendant's constitutional right to the same fact finder, or that no such measures could have been taken. For example, the State has failed to show that any attempt was made to reschedule the trial to an earlier date or even to notify the defendant of the Judge's planned departure. The record is devoid of any effort to protect the defendant's constitutional rights while Judge Coughlin was still available. The United States Supreme Court has stated that the decision to abort a trial must always be tempered "by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Jorn*, 400 U.S. at 486.

Implicit in this protection is the recognition not only that there must be a barrier to manipulation by the prosecution, but also that termination of a trial before a verdict is returned may hurt the defendant even without such manipulation. Every jury has its own character and the initial jury may be more favorably disposed to the defendant than the next jury.

6 W. LaFave et al., Criminal Procedure § 25.1(b) at 577 (3d ed. 2007). The same can be said for a particular justice presiding over a trial without a jury. The State failed to prove that the circumstances of this case justified depriving the defendant of his constitutional right to a trial before the sworn tribunal.

The State argues that, in finding manifest necessity for a mistrial, Judge Stephen did not act precipitously and gave significant consideration to potential alternatives to mistrial after hearing argument from both the defendant and the State. We agree. Indeed, the "[f]ailure of a trial court to exercise such prudence may reflect an inadequate concern for a defendant's constitutional protections, and therefore diminish the deference otherwise due" to a trial court's finding. *Gould*, 144 N.H. at 417. However, Judge Stephen's careful consideration in this case does not negate the State's failure to demonstrate the existence of manifest necessity.

Similarly, we are unpersuaded by the State's argument that this is simply a dispute over causation. The facts leading up to Judge Coughlin's unavailability are undisputed—whether the "cause" of the trial's termination is seen as the issuance of departure orders by the military or Judge Coughlin's decision to volunteer for duty makes no difference in our analysis. Rather, it is the totality of the circumstances, including the failure of the State to demonstrate that reasonable measures to protect the defendant's rights were either taken or unavailable, that ultimately forms the basis of our determination.

 "Determining whether manifest necessity exists to justify the declaration of a mistrial requires a balancing of competing concerns: the defendant's interests in completing his trial in a single proceeding before a particular tribunal versus the strength of the justification for a mistrial." *People v. Hicks*, 528 N.W.2d 136, 141 (Mich. 1994), *cert. denied*, 515 U.S. 1124 (1995), *and cert. denied*, 515 U.S. 1152 (1995); *see State v. Pond*, 133 N.H. 738, 740 (1990) (determining whether manifest necessity standard met requires weighing prosecution's and defendant's competing interests). "The protection of constitutional rights is a core function of the judiciary." *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562, 574 (1997). Here, although Judge Coughlin's decision to volunteer for duty was, without question, admirable, the record before us simply does not demon-

strate manifest necessity for a mistrial. However laudable the underlying cause, when a judge becomes unavailable after jeopardy has attached and maintains the ability to reasonably allow for the conclusion of that case, but fails to do so, the State cannot meet its burden of showing manifest necessity.

Accordingly, under the unique circumstances of this case, we hold that the Double Jeopardy Clause of the New Hampshire Constitution requires that the trial court's finding of manifest necessity be reversed. Because the defendant prevails under the State Constitution, we need not reach the federal issue. *See Ball*, 124 N.H. at 237.

*Reversed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.